UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 2132 JMB |
| | ) | |
| MEDICREDIT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Patricia Hudson alleges that defendant debt collector Medicredit, Inc., violated the Fair Debt Collection Protection Act (FDCPA) during a phone conversation by asking a question regarding the nature of her legal representation. The matter is presently before the Court on defendant's motion for summary judgment. Plaintiff has filed a response in opposition and the issues are fully briefed. All matters are pending before the undersigned with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

## I.      Factual Background

Plaintiff received medical treatment from Christian Hospital in 2016. The hospital subsequently placed the accounts for plaintiff's treatment with defendant. Plaintiff received a collection letter from defendant in June 2016. On November 3, 2016, plaintiff called defendant to obtain more information about the debt and to inform defendant that it should direct all communications to her attorney. A recording of that call has been provided to the Court.

At the outset of the telephone conversation, plaintiff stated that she was calling because she "received a statement" and wanted to know if she could "get verification of this debt." When asked, plaintiff provided the account number, her name, and her address so the proper record

could be located.  The Medicredit employee, who gave his name as Archie, told plaintiff that Christian Hospital had placed three accounts for collection.  Plaintiff then asked whether she could get a "written account statement from the original creditor."  Archie explained that she had to contact the hospital directly to get that information, and offered to provide her the appropriate contact information.  In response, plaintiff stated that Medicredit should "please just stop calling [her] cell phone" and "to speak with [her] attorney."  Archie responded by offering to place her attorney's name and phone number "in the system so our legal department can call him up and you won't get any more calls."  Plaintiff supplied the requested information.  Archie then asked, "Now is that a bankruptcy ma'am or workman's comp?"  Plaintiff responded that those questions needed to be directed to her attorney.  Archie responded, "No problem, we always ask it," and the call was terminated.  Plaintiff testified at deposition that she thought the question was disrespectful and that her rights as a consumer had been violated.  [Doc. # 28-1 at pp. 54, 56].

## II.     Legal Standards

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Anderson, 477 U.S. at 247.  The non-moving

party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." Richmond v. Higgins, 435 F.3d 825, 828 (8th Cir. 2006) (quoting 15 U.S.C. § 1692(a) and § 1692k(a)); see also Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1246 (8th Cir. 2006) ("The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage.") (citations omitted). The FDCPA provides for strict liability and is to be construed liberally to protect consumers. Istre v. Miramed Revenue Grp., LLC, No. 4:14 CV 1380 DDN, 2014 WL 4988201, at *2 (E.D. Mo. Oct. 7, 2014) (citation omitted).

To prevail on her claim that defendant violated the FDCPA, plaintiff must prove that she is a consumer; defendant is a debt collector; there was an attempt to collect a debt; and defendant violated, by act or omission, a provision of the FDCPA. Campbell v. Credit Prot. Ass'n, L.P., No. 4:12CV00289AGF, 2013 WL 1282348, at *4 (E.D. Mo. Mar. 27, 2013) (citing Pace v. Portfolio Recovery Assocs., LLC, 872 F. Supp. 2d 861, 864 (W.D. Mo. 2012)). A debt collector who violates the FDCPA is liable for any actual damages sustained by the plaintiff in addition to statutory damages of up to $1,000 and attorney's fees. Id.;15 U.S.C. § 1692k(a).

### III.    Discussion

Plaintiff's claim arises under 15 U.S.C. § 1692c(a)(2), which provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt . .

. if the debt collector knows the consumer is represented by an attorney with respect to such debt . . . ." § 1692c(a)(2) (emphasis added). Plaintiff asserts that defendant violated this provision by asking her whether her attorney represented her in connection with bankruptcy or workers' compensation claims. Defendant argues that it is not liable under the FDCPA because its question was not a "communication in connection with the collection" of the debt.[1]

Plaintiff cites several cases to support the proposition that, once notified that a debtor has legal representation, debt collectors may only ask for the attorney's contact information before ending the call. In Hanks v. Valarity, LLC, No. 4:14-CV-01433-JAR, 2015 WL 1886960 (E.D. Mo. Apr. 24, 2015), the debt collector Valarity placed multiple calls to plaintiff, despite his requests to cease calling. On one of these calls, the Valarity representative immediately terminated the call after plaintiff stated he had retained counsel. A few days later, a representative again called plaintiff, at which point he was able to provide his attorney's contact information. Hanks filed suit, alleging that Valarity violated four provisions of the FDCPA.[2] The Court denied Valarity's motion to dismiss the § 1692c(a)(2) claim, holding that Valarity was not shielded from liability on the second call because it could have learned the attorney's contact information during the first call. Id. at *3. The Court did not examine the question raised by this

---

[1] Defendant also argues that its question regarding the nature of the representation is a legitimate business inquiry, a basis on which courts have found that a communication did not violate § 1692c(a)(2). In those cases, however, the assertion of a legitimate inquiry was supported by an affidavit from a company representative explaining its reason for asking for more information. See Klein v. Stellar Recovery, Inc., No. 4:16 CV 1480 (JMB), 2017 WL 4551526 (E.D. Mo. Oct. 12, 2017) (obtaining debtor's updated contact information allows debt collector to notify credit bureaus and creditor); Bieber v. Associated Collection Servs., Inc., 631 F. Supp. 1410, 1417 (D. Kan. 1986) (asking about bankruptcy status allows debt collector to avoid wasting time pursuing bankrupt debtor). Here, defendant has not supported its assertion with any evidence. The Court finds no support for holding that, as a matter of law, an inquiry regarding the nature of the representation is always a legitimate business inquiry. Accordingly, defendant's argument will not be addressed.

[2] Hanks brought claims under provisions barring calls to debtors at inconvenient times and places, § 1692c(a)(1); calls made to harass, oppress, or abuse, § 1692d; the use of unfair or unconscionable means, § 1692f; and calls to those represented by an attorney, § 1692c(a)(2).

case — whether the call to obtain the attorney's contact information constituted a communication in connection with the collection of a debt. In three other cases plaintiff cites, after being informed that the debtors had retained counsel, the debt collectors asked them to set up payment plans — conduct that clearly constitutes an attempt to collect a debt. See Curtis v. Caine & Weiner Co., Inc., No. 4:15CV1721 CDP, 2016 WL 520987 (E.D. Mo. Feb. 10, 2016) (denying Rule 12(b)(6) motion); Istre v. Miramed Revenue Grp., LLC, No. 4:14 CV 1380 DDN, 2014 WL 4988201 (E.D. Mo. Oct. 7, 2014) (denying Rule 12(b)(6) motion); Robin v. Miller & Steeno, P.C., No. 4:13CV2456 SNLJ, 2014 WL 3734318, at * 2 (E.D. Mo. July 29, 2014) (granting plaintiff's motion for partial summary judgment).

Not all communications between debtor and debt collector are "in connection with a debt." See Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 384 (7th Cir. 2010) ("Neither this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt."). It is clear that "the statute does not apply to *every* communication between a debt collector and a debtor." Id. at 384-85 (emphasis in original). It is equally true, however, that a communication need not include an "explicit demand for payment" to be considered "in connection with the collection" of a debt. Id. at 385. The Eighth Circuit has joined the Third, Sixth, and Seventh Circuits in holding that, "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." McIvor v. Credit Control Servs., Inc., 773 F.3d 909, 914 (8th Cir. 2014) (citing Simon v. FIA Card Servs., N.A., 732 F.3d 259, 266-67 (3rd Cir. 2013); Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011); and Gburek, 614 F.3d at 385). "[C]ommunications that include discussions of the status of payment, offers of alternatives to default, and requests for financial

information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 245-46 (3rd Cir. 2014) (citation omitted); see also Gburek, 614 F.3d at 386 (letters proposing debt repayment and settlement options constituted debt collection activity). By contrast, "[w]here a communication is clearly informational and does not demand payment or discuss the specifics of an underlying debt, it does not violate the FDCPA." Goodin v. Bank of Am., N.A., 114 F. Supp. 3d 1197, 1205 (M.D. Fla. 2015) (bank's notice that debtor could be charged fees while their loan was in default status, letter alerting debtors to existence of a program to avoid foreclosure, and notice that loan had been referred to foreclosure "did not ask for or encourage payment and were not intended to induce payment."); see also Bailey v. Sec. Nat. Servicing Corp., 154 F.3d 384, 388-89 (7th Cir. 1998) (letter informing debtors of current status of their account and listing prospective due dates is not communication related to the collection of a debt); Sumner v. Smith, No. 3:11-CV-120, 2012 WL 4711995, at *4 (E.D. Tenn. Oct. 3, 2012) (dismissing § 1692c(a)(2) claim because letter and agreement to undo foreclosure sale and reinstate ownership of the property to plaintiff was informational and was "not the type of abusive, harassing or fraudulent communications the FDCPA seeks to prohibit.").

In determining whether a particular communication was made in connection with the collection of a debt, courts examine the relationship between the parties, the purpose and context of the communication as a whole, and whether there is an explicit demand for payment. Backlund v. Messerli & Kramer, P.A., 964 F. Supp. 2d 1010, 1014 (D. Minn. 2013). The language used in the communication is also a factor in determining whether it was made in connection with the collection of a debt. Thompson v. BAC Home Loans Servicing, L.P., No. 2:09-CV-311-TS, 2010 WL 1286747, at *4 (N.D. Ind. Mar. 26, 2010) (debt collector's notice

with information about new debt servicer was not communication in connection with collection of debt). Finally, legitimate business inquiries and informational communications do not violate § 1692c(a)(2). Bieber v. Associated Collection Servs., Inc., 631 F. Supp. 1410, 1417 (D. Kan. 1986) (while "it probably would have been a better practice for defendant to have hung up the phone after learning plaintiffs were represented by an attorney," debt collector did not violate § 1692c(a)(2) by asking whether debtors intended to file for bankruptcy, where debt collector testified it wanted to avoid "wast[ing] time, effort and money in attempting to collect debts from a bankrupt debtor"); see also Salsbury v. Trac A Chec, Inc., 365 F. Supp. 2d 939, 941 (C.D. Ill. 2005) (§ 1692c(a)(2) not violated by debt collector's calls to inform debtor that it had "verified the attorney's representation and would not be contacting him again").

The Court recently granted summary judgment to a debt collector on a § 1692c(a)(2) claim arising from a similar phone conversation between debtor and debt collector. Klein v. Stellar Recovery, Inc., No. 4:16 CV 1480 (JMB), 2017 WL 4551526 (E.D. Mo. Oct. 12, 2017). As in this case, the plaintiff in Klein called the debt collector and, after an initial exchange of information regarding the debt, informed the debt collector that she was represented by counsel. The debt collector obtained the attorney's contact information and then asked plaintiff whether she wanted to update her own contact information. Id. at *1. Klein alleged that this question violated § 1692c(a)(2). The Court disagreed, finding that the "request for plaintiff's contact information was not a 'communication in connection with the collection of a debt' as required to establish liability under 15 U.S.C. § 1692c(a)(2)." Id. at *4. As the Court explained, plaintiff initiated the contact.[3] In addition, the evidence showed that defendant had made only one prior

---

[3] The fact that plaintiff initiated the call does not preclude liability under the FDCPA, but it is a factor in determining whether an animating purpose of the communication was to collect a debt. See Klein, 2017 WL 4551526, at *4 n.2

attempt to contact Klein and thus was not aggressively pursuing collection of her debt. And, while defendant's representative provided information regarding "the specifics of the underlying debt," this was in response to Klein's request for specific information. The Court found it significant that defendant's representative "did not ask plaintiff to make a payment, suggest a payment plan, or ask whether plaintiff intended to pay the debt." Id. Finally, Klein did not refute defendant's assertion — made by affidavit — that the purpose of asking for Klein's current contact information was to update her file with the credit bureaus and her creditor. Id. The circumstances of the parties' communication in this case are squarely on point with Klein.

Plaintiff nonetheless argues that Klein is distinguishable, arguing in essence that a debt collector's question regarding bankruptcy proceedings is always an attempt to collect a debt. In making this argument, plaintiff relies on a recent decision denying a motion for judgment on the pleadings. Young v. Northland Grp., No. 4:16CV1858 HEA, 2018 WL 306023 (E.D. Mo. Jan. 5, 2018). The plaintiff in Young alleged that she called the debt collector and stated that she had an attorney. According to the complaint, "after plaintiff informed Defendant that she was represented by . . . [counsel], Defendant continued its attempts to collect the debt, asking Plaintiff for information pertinent to debt collection, specifically asking whether Plaintiff had retained counsel for bankruptcy purposes." Case No. 4:16CV1858, Complaint ¶14 [Doc. # 4]. Because the matter was before the Court on a motion for judgment on the pleadings, the Court was required to accept plaintiff's allegations as true, including her assertion that the defendant's question was an attempt to collect the debt.

In this case, by contrast, the issue comes before the Court on summary judgment and plaintiff must proffer "specific facts demonstrating that there is a dispute" of material fact. Anderson, 477 U.S. at 247. Plaintiff "asserts that Defendant's question as to whether she had

obtained an attorney for bankruptcy was a question designed to answer whether Plaintiff intended to pay the debt." Resp. to Statement of Uncontroverted Material Facts at 15 [Doc. # 31]. This assertion is not a fact but an argument based on the facts. Plaintiff also argues that knowing whether she was filing for bankruptcy could provide defendant "with a whole new avenue in its efforts to collect the debt." [Doc. # 30 at 7]. While the Court is required at the summary judgment stage to draw all inferences in favor of the nonmoving party, plaintiff has failed to offer a reasonable explanation of how knowing that she intends to file for bankruptcy aids the debt collector in collecting the debt and, furthermore, doing so by abusive means.

In conclusion, the undisputed evidence in this case establishes that plaintiff initiated the communication and defendant's representative did not ask for money or for a payment plan. Furthermore, plaintiff never received another communication from defendant in connection with this debt. Based on this evidence, the Court does not see how a reasonable factfinder could conclude that "the animating purpose" of defendant's question about the nature of the representation was to induce plaintiff to pay the debt. Thus, there was not a communication in connection with the collection of a debt and defendant is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. # 26] is **granted**.

A separate judgment in accordance with this Memorandum and Order will be entered.


/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of March, 2018.